UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DOMINIQUE LEE, ) | |
|     Plaintiff ) | |
| ) | |
| v. ) | CASE NO.: 2020-_____ |
| ) | |
| NORTH AMERICAN ) | |
| CONSTRUCTION SERVICES, Ltd.; ) | |
| ) | |
|     a subsidiary of ) | |
| ) | |
| FIVES NORTH AMERICAN ) | |
| COMBUSTION, INC. ) | |
| ) | |
|     and ) | |
| ) | JURY DEMAND |
| FIVES ITAS, ) | |
|     Defendants. ) | |

## COMPLAINT

**COMES NOW**, the Plaintiff, DOMINIQUE LEE, by and through his attorney of record, BRANDON J. GILHAM and H. EMMANUEL SCOZZARO, and brings this action for injunctive relief and damages pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. This Court has jurisdiction of this matter under 42 U.S.C. § 2000e-5(f), and under 28 U.S.C. §§ 1331 and 1343.

### PARTIES

1. Plaintiff is a black male citizen of the United States and resident of Jefferson County, Alabama.

2. Defendant, North American Construction Services, LLC. (NACS), is a subsidiary of the international corporation known as NORTH AMERICAN COMBUSTION, INC. (North American Headquarters) and FIVES ITAS (International Headquarters). NACS is a

corporation doing business in the Northern District of Alabama, more specifically at 5000 Commerce Ave., Birmingham, AL 35210, and is subject to the jurisdiction of this Court. Defendant employs more than fifteen (15) employees and is an employer within the meaning of 42 U.S.C §2000e-(b).

## FACTUAL BACKGROUND

3. Plaintiff began working for Defendant as a full-time employee in March of 2019 after completing Defendant's standard three (3) month probationary period. Plaintiff's job title was Welder.

4. While working as an employee of the Defendant, Plaintiff was consistently harassed, discriminated against, and denied equal terms and conditions of employment. This consisted of but was not limited to:

    a. Supervisors physically hovering over and berating Plaintiff at Plaintiff's workstation for the purpose of intimidating Plaintiff and interfering with Plaintiff's work performance. Similarly situated non-black employees were not subjected to such excessive means of over management and discipline.

    b. Plaintiff was prohibited from using the overhead crane, an essential and necessary tool for a Welder to have access to in order to maximize work efficiency and produce at rates expected by NACS. Similarly situated non-black Welders and other employees, some of which have less training and experience than Plaintiff, are allowed to use the overhead crane. Although Plaintiff is denied access to said equipment, supervisors consistently disciplined Plaintiff when production fell below the NACS's goal.

c. Supervisors repeatedly recorded and took photos of Plaintiff and Plaintiff's work product. Although supervisors and managers told Plaintiff that the photographs were taken to demonstrate good and bad work product that involve a safety hazard, supervisors never informed Plaintiff of the reasons any of the photographs were taken or whether the photographs were considered to be of good or bad work product. Supervisors did not use said photographs to train, educate, or demonstrate to Plaintiff improved and safer work production techniques and methods. Non-black employees and their work product are not recorded or photographed by supervisors. The underlying purpose of said photographs is to intimidate Plaintiff and interfere with Plaintiff's work performance.

d. Supervisors consistently assigned Plaintiff and other black employees a substantially higher workload and more labor-intensive tasks than similarly situated non-black employees.

e. Supervisors and managers engaged in ploys that suggested stereotypical views of black individuals. For example, on June 28, 2019 Plaintiff was forced to read aloud to co-workers and managers. When Plaintiff mis-pronounced a word, a manager suggested to the group that Plaintiff was ignorant and could not read. Plaintiff continued to be ridiculed until he felt no choice but to leave work for the day.

f. On May 24, 2019, Plaintiff and a black co-worker were sent home early by a supervisor that falsely claimed that the two employees had not been working for around an hour and a half. Not only was the supervisor's reasoning fabricated, said supervisor was not in the presence of either employee and lacked knowledge of

    either employees actions within said time frame. No non-black employee was sent home early.

5. Upon information and belief, non-black, similarly situated employees were not subjected to the above described harassment, discrimination, and denial of equal terms and conditions of employment.

6. On or about May 28, 2019, Plaintiff and a black co-worker complained to supervisors and a plant manager about Plaintiff and other black employees being managed and treated differently than similarly situated non-black employees. The following week, Plaintiff's work hours were reduced from fifty-six (56) hours to forty (40) hours per week, while similarly situated non-black employees' hours were not reduced.

7. Plaintiff filed a timely charge of race discrimination with the Equal Employment Opportunity Commission and brings this action within ninety (90) days of the receipt of his Notice of Right to Sue.

8. On or about February 16, 2020, Plaintiff was terminated by Defendant. Plaintiff was told he was terminated as a result of having 8.5 Occurrence Points, although the company's well-known policy is that employees are not terminated based on Occurrence Points until an employee accrues 9 Points.

9. Multiple black and non-black witnesses, including former and current NACS employees, have personally witnessed Plaintiff and other black employees being harassed and racially discriminated against. Many of said witnesses that are of a racial minority have also been personally harassed and racially discriminated against in the same and/or similar manners as described above by Defendant. (For the protection of current and future employment

opportunities, counsel for Plaintiff does not wish to disclose the identity or information that would reveal the identity of the witnesses that have disclosed information.)

10. Defendant's harassment, racial discrimination, and retaliation toward Plaintiff is the direct and proximate cause to damages endured by Plaintiff.  Said damages include loss of income, loss of employment opportunities (including an annual raise that was to occur in March 2020), emotional pain and suffering, loss of and psychological damages. Each occurrence has increased the damages endured by Plaintiff, and the severity of the damages is amplified by the totality of the circumstances.

## COUNT I - RACIAL DICRIMINATION

11. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 10 of the Complaint.
12. Plaintiff is a black male and is therefore a member of a protected class.
13. Plaintiff was qualified to use the overhead crane but was prohibited from using the overhead crane. Similarly situated non-black employees with less or equal qualifications were allowed to use the overhead crane.
14. Plaintiff sought to be treated the same way non-black employees were treated by supervisors and managers.  Plaintiff was subjected to much more invasive, harsh, and demoralizing managerial techniques than similarly situated non-black employees by supervisors and managers.
15. Defendant's acts of harassment and discrimination were performed with malice and reckless indifference to plaintiff's protected civil rights.
16. The foregoing discriminatory actions of Defendant against Plaintiff were motivated because of Plaintiff's race in violation of Title VII of the Civil Rights Act of 1964, as amended, 42

U.S.C. § 2000e-2 and were the direct and proximate cause of damages to Plaintiff as described in paragraph 10.

## COUNT II - RETALIATION

17. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 10 of the Complaint.

18. Plaintiff complained to NACS supervisors and managers about being managed and treated differently than similarly situated non-black employees.

19. In retaliation of Plaintiff's complaint, Plaintiff's work hours were reduced from fifty-six (56) hours per week to forty (40) hours per week. The reduction in Plaintiff's work hours occurred the week following Plaintiff's complaint and was implemented and enforced by the very supervisors and managers to which Plaintiff complained.

20. The foregoing retaliation of Defendant against Plaintiff was a direct and proximate cause of damages to Plaintiff as described in paragraph 10.

## COUNT III - HOSTILE WORK ENVIRONMENT

21. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 10 of the Complaint.

22. Plaintiff is a black male and is therefore a member of a protected class.

23. Defendant's acts of harassment and discrimination created a hostile and offensive working environment permeated with discriminatory intimidation, ridicule, and insult that was sufficiently severe and pervasive that they altered the conditions of Plaintiffs employment and created an and interfered with Plaintiff's work performance.

24. Only Plaintiff and other black employees were subjected to said acts of harassment and discrimination. Similarly situated non-black employees were not forced to word in a hostile and offensive work environment.

25. Said acts of harassment and discrimination toward Plaintiff were performed by supervisors and managers acting within the course and scope of employment with NACS, therefore, respondeat superior liability exists.

26. The foregoing hostile work environment created by Defendant was a direct and proximate cause of damages to Plaintiff as described in paragraph 10.

## IV - RETALITORY DISCHARGE

27. Plaintiff made a charge of race discrimination with the EEOC, a statutorily protected action. The EEOC provided the Defendant with access to Plaintiff's complaint.

28. Defendant was subsequently terminated by the very supervisors and managers in which Plaintiff complained of to the EEOC.

29. Plaintiff asserts that the Defendant terminated Plaintiff's employment in retaliation of Plaintiff's EEOC Complaint and because of Plaintiff's race, color, and prior complaints made to supervisors and managers.

30. As a result of his termination, Plaintiff suffered damages as described in paragraph 10.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays this Court:

(a) To order Defendant to reinstate him to the position he held prior to his discriminatory discharge, pursuant to Title VII of the Civil Rights Act of 1964;

(b) To award him under Title VII all the pay and fringe benefits he has lost as a result of Defendant's unlawful discrimination against him;

(c) To award him, under Title VII, compensatory and punitive damages.

(d) To award him under 42 U.S.C. § 2000e-5(k) reasonable attorney's fees and costs of this action;

(e) To award him such other and further relief as this Court deems just and proper.

## JURY DEMAND

DEFENDANT RESPECTFULLY DEMANDS A TRIAL BY JURY ON ALL ISSUES OF THIS CASE.

| | |
|---|---|
| __February 19, 2020_____<br>Date | _/s/ *Brandon J. Gilham*_____<br>BRANDON J. GILHAM<br>Attorney for Defendant (GIL092) |
| Scozzaro Law, LLC<br>511 Creekside Court<br>P.O. Box 548<br>Helena, Alabama 35080<br>(205) 624-3367<br>ScozzaroLaw@gmail.com | _/s/ *H. Emmanuel Scozzaro*_____<br>H. EMMANUEL SCOZZARO<br>Attorney for Defendant (SCO037) |